IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CRAIG A. CHILDRESS,                              ) | |
| Plaintiff,                                       ) | |
| vs.                                              ) | Case No. 3:12-cv-1230-NJR-DGW |
| ROBERT HILLIARD, WILLIAM PEYTON, TY BATES, DANALYN WILSON, and C/O SAURBRUNN,  ) | |
| Defendants.                                      ) | |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Now pending before the Court is the Motion for Summary Judgment filed by Defendants on January 17, 2017 (Doc. 86). Plaintiff Craig Childress responded to the motion on April 14, 2017 (Doc. 94). For the reasons set forth below, the motion is granted in part and denied in part.

### BACKGROUND

Plaintiff Craig Childress, a convicted sex offender, was incarcerated by the Illinois Department of Corrections ("IDOC") at Big Muddy River Correctional Center ("Big Muddy") until August 19, 2010, when he was released on mandatory supervised release ("MSR"). A majority of the population at Big Muddy during the relevant time period consisted of sex offenders: it was the "sex offender facility for the State" of

Illinois (Doc. 87-4, p. 8-9).[1] The terms of Childress's MSR restricted him from possessing any computer-related items.

Prior to his release from Big Muddy, Childress enrolled in a job preparedness class, which he understood to be part of a general Life Style Redirection Program (Doc. 87-1, pp. 14-15). This voluntary program was offered to inmates, like Childress, who were nearing a release date (Doc. 87-1, pp. 19-20). The program began within IDOC when Defendant Robert Hilliard was Assistant Warden of Programs between April 2006 and September 2007 (Doc. 87-2, pp. 9, 14). The class did not begin at Big Muddy until 2008, however, because of a teacher shortage. Defendant William Peyton was the Assistant Warden of Programs at that time (Doc. 87-2, p. 14). Defendant Ty Bates took over as Assistant Warden of Programs in December 2009 (before Childress enrolled in the class) (Doc. 87-6, p. 15; Doc. 87-4, p. 6-7).[2]

The job preparedness class was created by IDOC's Program Division using grant money acquired from the "Safer Foundation" (Doc. 87-6, p. 15).[3] The class ran in the same manner as vocational programs at the prison, with instructors being hired through a junior college. Defendant Danalyn Wilson was one such instructor; she was employed by Rend Lake College but exclusively taught the job preparedness class at

---

[1] Defendants Hilliard and Peyton estimated anywhere between 15 percent and 30 percent of inmates at Big Muddy were sex offenders (Doc. 87-6, p. 10).
[2] There is some confusion as to what dates each of these three defendants held their respective roles. Defendant Bates indicated he was an Assistant Warden at Big Muddy from December 2009 until early or mid-2011 when he became Warden of Big Muddy. In December 2011, he became a Deputy Director of IDOC (Doc. 87-4, p. 6).
[3] According to its website, the Safer Foundation "is one of the nation's largest not-for-profit providers of services designed exclusively for people with criminal records. We focus on helping our clients secure and maintain jobs because we understand that employment offers the best chance at successful re-entry." THE SAFER FOUNDATION, http://www.saferfoundation.org/about/ overview (last visited August 6, 2017).

Big Muddy from February 2008 to May 2011 (Doc. 87-2 pp. 11-12, 29-30). When Wilson was teaching the class, she reported to Assistant Warden Peyton and then to Assistant Warden Bates (Doc. 87-2, p. 31).

To enroll in the class, inmates would make a written request, which was sent to Wilson. She would then enroll inmates in the ten day class based on their release date (Doc. 87-2, p. 16). The only requirements for the class were that an inmate had at least a sixth-grade education and less than a year left on his sentence (Doc. 87-2, p. 17). The Safer Foundation provided the class content and materials, including a booklet that was given to inmates containing course materials (Doc. 87-2, pp. 27-28). Wilson also created tests on the material covered in class (Doc. 87-2, p. 22).

The inmates enrolled in the job preparedness class at Big Muddy used desktop computers during class (87-2, pp. 30, 32). They created resumes as part of their coursework, which were saved by Wilson on the computer (and then to a server) and then downloaded to a computer disk that was kept under lock and key by Wilson (Doc. 87-2, pp. 32, 37). The inmates had "no contact with the disks whatsoever" because the disks posed a security risk per Assistant Warden Peyton (Doc. 87-2, p. 31).

A booklet handed out to inmates in the class informed them they would receive the disk upon their release from prison (87-2, pp. 41-42). Wilson also informed inmates at the beginning and end of the class that the disks would be placed in their personal property (Doc. 87-2, p. 54). At the end of each class, Wilson labeled the disks, placed them in a white envelope with the inmate's name and number and the notation "job

prep." Wilson then dropped the disks off at the personal property area of the jail (Doc. 87-2, p. 37-38).

Defendant Officer Saurbrunn, the property officer, then placed the disks in the property boxes of out-going inmates (Doc. 87-3, 19-20). From his testimony, it appears he did not place the disks in the boxes until an inmate collected the box before his release; at that point, he checked to see if it had a disk and, if it did, he informed the inmate that he was putting it in his property box (Doc. 87-3, p. 20). Officer Saurbrunn does not recall Childress specifically, nor does he recall any conversation he may have had with him (Doc. 87-3, pp. 22-23). The Assistant Warden of Operations oversaw the property room (Doc. 87-5, pp. 15-16). This position was held by Hilliard (until December 2009) and then by Peyton (Doc. 87-5, p. 7-8).[4] The procedure regarding the handling of disks was determined by the Assistant Warden of Programs (*i.e.*, Defendant Peyton and then Defendant Bates) (Doc. 87-2, p. 31; Doc. 87-6, pp. 36-37).[5]

---

[4] There are only two Assistant Warden positions: one for Programs and the other for Operations (Doc. 87-5, p. 7).

[5] Defendant Hilliard was employed at Centralia Correctional Center as the Assistant Warden of Operations after he left Big Muddy in December 2009 (Doc. 87-5, pp. 6, 12). At Centralia, inmates never were given a disk upon completion of the identical job preparedness class, which was offered throughout IDOC (Doc. 87-5, p. 12-13). In fact, the reason why disks were not given to inmates was because of restrictions in their MSR:
    Q. And could there be a restriction on them possessing computer-related materials?
    A. Outside of the prison?
    Q. Yes. When they are on MSR?
    A. That would be with anybody. It is not just sex offenders.
    Q. Okay. I didn't realize that.
    A. Or at least that was what we went by at Centralia, that computer disks don't leave the institution.
    Q. Regardless of what type of offender it was?
    A. Yes. Sir. (Doc. 87-5, p. 20).
Assistant Warden Bates testified, however, that the "state-wide" policy of issuing disks to inmates upon completion of the class was stopped after Childress was re-incarcerated (Doc. 87-4, p. 24).

Notwithstanding Wilson's practice, Childress was not told that a disk would be placed in his property box, nor was such information contained in the documents he read for the class (Doc. 87-1, pp. 21-22). And, on the envelope containing Childress's disk, there was no notation that it contained a disk (Doc. 87-2, pp. 48-49).

Shortly after his release from prison and while on supervision, Childress's property was searched by state officials, and the computer disk from the job preparedness class was found. Possession of the disk violated the terms of Childress's MSR, and he was subsequently re-incarcerated. According to Childress, he had no idea a disk was placed (or "planted") in his property box. He did not open the box prior to it being searched by state parole officials (Doc. 87-1, p. 37). At that time, Childress was two weeks into a one-year term of MSR; he ended up spending that year in jail as a result of the violation (Doc. 87-1, pp. 41). The presence of the disk in his property box was the sole reason his MSR was revoked (Doc. 87-1, pp. 43-44).

Wilson generally was aware there were limitations on a sex offender's possession of computer equipment (Doc. 87-4, p. 40). She testified, however, that she was unaware of the specific offenses of her students and did not know if any particular offender was incarcerated for a sex offense because she did not have access to offenders' files (Doc. 87-4, p. 40). She also was unaware of any person having his supervised release revoked because of a disk generated in her class (Doc. 87-4, p. 43). But Childress testified that he specifically spoke to Wilson about his crime and told her he was a sex offender (Doc. 87-1, pp. 11, 32). Childress stated that he spoke to Wilson "personally about the fact that I was there for a sex offense and I was going to be on parole. She

knew my restrictions. I saw her discuss this with other people." (*Id.*, p. 11). Childress further testified that Wilson said she "has dealt with other sex offenders before" and that he "[did not] have to worry about that. . . . We talked about my crime. She told me what a change that I had made as a sex offender as participating in the sex offender program." (*Id.*, p. 32).

Officer Saurbrunn also was unaware of a particular inmate's crime and was not aware of limitations regarding computing equipment for inmates being released (Doc. 87-3, p. 21-22). Childress testified that he had conversations with Saurbrunn, however, and that Saurbrunn knew Childress was a sex offender and was not supposed to have a computer disk (Doc. 87-1, p. 89).

Assistant Wardens Bates and Peyton were aware that sex offenders could have restrictions on computer equipment in their supervised release agreements (Doc. 87-4, p. 21-22, Doc. 94-11, p. 12). Assistant Warden Hilliard was aware that inmates, including sex offenders and non-sex offenders, released on mandatory supervised release would have restrictions on computer equipment (Doc. 87-5, p. 20). Defendants uniformly testified, however, that they were unaware of any other person whose supervised release was revoked under similar circumstances (*See e.g.* Doc. 87-6, p. 46).[6]

All of the Assistant Wardens agreed that the policy regarding disks and their dissemination was made in the upper echelons of IDOC, by the Director of Programs, the Deputy Director of Programs, or a jail's warden (Doc. 87-6, p. 38; Doc. 87-5, p. 13;

---

[6] But Childress testified that Assistant Warden Bates told him that two other inmates had their supervised release revoked because of the disks that were given to them at the end of the class (Doc. 94-5, p. 9).

Page 6 of 18

Doc. 87-4, pp. 23-24). It is undisputed that after and because of the above events, Big Muddy stopped placing disks in inmates' property boxes (Doc. 87-4, p. 12-13). This decision was made after Assistant Warden Bates initiated the change through the Chief of Programs, Deb Denning, who is not a defendant in this lawsuit (Doc. 87-4, p. 13, 23-24).

On December 3, 2012, Childress filed a complaint alleging that his constitutional rights were violated by a policy or practice of knowingly placing computer disks in personal property that would violate the terms of supervised release (Doc. 1). The complaint was dismissed by Senior District Judge J. Phil Gilbert on February 20, 2013 (Doc. 7). Childress appealed, and the Seventh Circuit Court of Appeals reversed and remanded this matter on June 12, 2015 (Doc. 34; *Childress v. Walker*, 787 F.3d 433 (7th Cir. 2015)). Counsel was appointed to represent Childress, and an amended complaint was filed on December 15, 2015 (Doc. 51). The case was transferred to the docket of the undersigned on June 7, 2016 (*see* Doc. 73).

Childress alleges in Count 1 that Defendants violated his constitutional rights by creating, enforcing, and/or following a policy whereby a prohibited computer disk was placed in his personal property. In Count 2, Childress alleges a state law claim of intentional infliction of emotional distress. Discovery has been completed, and Defendants have now moved for summary judgment.

## LEGAL STANDARD

Summary judgment is proper only if the moving party can demonstrate "that there is no genuine issue as to any material fact and the movant is entitled to judgment

as a matter of law." FEDERAL RULE OF CIVIL PROCEDURE 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005); *Black Agents & Brokers Agency, Inc. v. Near North Ins. Brokerage, Inc.*, 409 F.3d 833, 836 (7th Cir. 2005). At the summary judgment phase of the litigation, the facts and all reasonable inferences are drawn in favor of the nonmoving party. *Kasten v. Saint-Gobain Performance Plastics Corp.*, 703 F.3d 966, 972 (7th Cir. 2012). The Court shall "neither come to a conclusion on factual disputes nor weigh conflicting evidence." *E.E.O.C. v. Sears, Roebuck & Co.*, 233 F.3d 432, 436 (7th Cir. 2000). Summary judgment shall be denied "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

A moving party is entitled to judgment as a matter of law where the non-moving party "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex*, 477 U.S. at 323. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* The Seventh Circuit has stated that summary judgment is "the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Steen v. Myers*, 486 F.3d 1017, 1022 (7th Cir. 2007) (quoting *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005) (other citations omitted)).

## DISCUSSION

The gravamen of Childress's complaint is that his liberty interests were violated by Defendants' deliberate indifference in placing a computer disk in his property, or condoning a policy that caused a computer disk to be placed in his property, knowing that possession of the disk would violate the terms of Childress's supervised release and lead to its revocation. *See Childress*, 787 F.3d at 440. The Seventh Circuit held this claim is analyzed under the Eighth Amendment's prohibition against cruel and unusual punishment rather than the broader substantive due process guarantees of the Fourteenth Amendment. *Id.* ("incarceration after the time specified in a sentence has expired violates the Eighth Amendment if it is the product of deliberate indifference").

In reaching this conclusion, the Seventh Circuit cited *Burke v. Johnson*, 452 F.3d 665, 667 (7th Cir. 2006), which in turn relied on a test identified by the Third Circuit in *Moore v. Tartler*, 986 F.2d 682 (3rd Cir. 1993). In *Moore*, the Third Circuit held that a plaintiff must establish three elements to succeed on a claim such as the one brought by Childress in this case:

> First, a plaintiff must demonstrate that a prison official had knowledge of the prisoner's problem and thus of the risk that unwarranted punishment was being, or would be, inflicted. Second, the plaintiff must show that the official either failed to act or took only ineffectual action under the circumstances, indicating that his response to the problem was a product of deliberate indifference to the prisoner's plight. Finally, the plaintiff must show a causal connection between the official's response to the problem and the unjustified detention.

*Moore*, 986 F.2d at 686 (citing *Sample v. Diecks*, 885 F.2d 1099 (3rd Cir. 1989)). The Court's analysis begins with this test.[7]

First, the Assistant Wardens (Defendants Bates, Peyton, and Hilliard) knew or should have known there was risk to placing a disk in the personal property of a sex offender who was about to be released, as possession of the disk would violate the terms of MSR. Certainly these upper-level IDOC officials would have been aware of conditions of supervised release of persons in their custody. From Assistant Warden Hilliard's testimony, it was a common condition of MSR for a sex offender (or any inmate) that he may not possess a disk and that, because of this condition, inmates at Centralia were not given such disks upon their release. Both Assistant Wardens Bates and Peyton also knew there were restrictions on computer equipment such that they should have been aware of the risk of placing a disk in an inmate's property.

As to Wilson and Saurbrunn, Childress testified that both Defendants were aware he was a sex offender and that Wilson was aware of the "restrictions" he would be under while on MSR.[8] Certainly their knowledge of such restrictions should have given them pause in placing potentially unauthorized material in an inmate's property without his knowledge or consent.

Second, while there is no evidence Defendants deliberately placed the disk in Childress's property knowing that his supervised release would be revoked, a

---

[7] Defendants do not specifically address the test articulated in *Moore* but do argue that they had no knowledge of the risk to Childress, that they were not deliberately indifferent, and that their actions were not the proximate cause of the deprivation of Childress's liberty interests.

[8] While Defendants testified they had no knowledge of Childress's situation, the Court on summary judgment must construe all facts and draw reasonable inferences in favor of Chidress, the non-movant.

reasonable jury may find that Defendants' conduct was highly reckless. "The infliction of suffering on prisoners can be found to violate the Eighth Amendment only if that infliction is either deliberate, or reckless in the criminal law sense." *Duckworth v. Franzen*, 780 F.2d 645, 652-53 (7th Cir. 1985). Negligence, gross negligence, or even "recklessness" as that term is used in tort cases, is not enough. *Id.* at 653; *Shockley v. Jones*, 823 F.2d 1068, 1072 (7th Cir. 1987). Put another way, a plaintiff must demonstrate that the officials were "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and that the officials actually drew that inference. *Greeno*, 414 F.3d at 653. "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, . . . and a fact finder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Farmer v. Brennan*, 511 U.S. 825, 842 (1994) (citations omitted).

If prison officials knew that conditions of MSR prohibited the possession of computer equipment, it should have been obvious to prison officials that placing a disk in a probationer's personal property would violate the terms of supervised release. Defendants, while not on parole boards and not probation officers, should have been familiar with the conditions of supervised release because those conditions were undoubtedly relayed to them any time an inmate is incarcerated and released.[9] It stretches credulity to believe that these Defendants were wholly oblivious to the known

---

[9] IDOC maintains custody of persons placed on supervised release, and the Prisoner Review Board monitors compliance while on supervised release. 730 Ill. Comp. Stat. § 5/3-14-2.

risk of placing prohibited items in an inmate's personal property, without his knowledge or consent, prior to release. *Figgs v. Dawson*, 829 F.3d 895, 902 (7th Cir. 2016) (deliberate indifference can be shown if "the defendant was essentially criminally reckless, that is, ignored a known risk"). A jury could find Defendants knew or should have known that the disk would negatively affect Childress's liberty interest and that by doing nothing (or affirmatively placing the disk in his property), they were deliberately indifferent to that harm. *See Schneider v. County of Will, Ill.*, 528 F. App'x 590, 594 (7th Cir. 2013) ("A jailer is deliberately indifferent when he does nothing, or when he takes action that is so inept or ineffectual that deliberate indifference can be inferred.") (citations omitted).

Third, there is a causal connection between the placement of the disk in Childress's property and the revocation of his supervised release. During the relevant time period, there is no dispute there was a policy of placing disks in inmates' property after completion of the job preparedness class. This policy led to the placement of the disk in Childress's property, which in turn resulted in the violation of the terms of his MSR. The contours of the policy were either set by IDOC or a jail's warden. At Big Muddy, the Assistant Warden of Programs, as Ms. Wilson testified, was personally involved in the manner in which the disks were given to inmates. At the time, Defendant Bates was the Assistant Warden of Programs, and Defendant Peyton was the Assistant Warden of Operations. Defendant Peyton was also the Assistant Warden of Programs, however, and directed the manner in which the disks would be handed out to inmates. Thus, both Bates and Peyton were personally involved in the conduct that

may have violated Childress's constitutional rights. *See Chavez v. Illinois State Police*, 251 F.3d 612, 651 (7th Cir. 2001) (finding that supervisors are subject to § 1983 liability if they know about the conduct and "facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see") (quotation marks and citations omitted). The policy was then carried out by Wilson, who created the disk, and Saurbrunn, who placed it in Childress's property. Further, Childress testified that, but for the discovery of the disk, his supervised release would not have been revoked, and he would not have spent an additional year in prison. A reasonable jury could find, therefore, that Childress's Eighth Amendment rights were violated.

The only defendant entitled to summary judgment at this stage is Defendant Hilliard, who was not employed at Big Muddy at the time Childress either took the class or was released from custody. There also is no evidence that Hilliard created the policy at issue or that he turned a blind eye to the practice as it relates to Childress. Because there is no causal connection between any action of Hilliard and the disk being placed in Childress's property, he is entitled to judgment as a matter of law.

*Qualified Immunity*

Even if Childress's claims survive summary judgment on the merits, Defendants argue they are entitled to qualified immunity. Qualified immunity "protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quotation marks and citation omitted). In determining whether the defendants are entitled to

qualified immunity, the Court must consider two questions: whether "the facts that a plaintiff has alleged [ ] or shown [ ] make out a violation of a constitutional right"; and, "whether the right was clearly established at the time of defendant's alleged misconduct." *Pearson*, 555 U.S. at 232 (citations and quotation marks omitted); *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *See also Miller v. Harbaugh*, 698 F.3d 956, 962 (7th Cir. 2012).

As indicated above, a reasonable jury could find that Childress's constitutional rights were violated. The first question, therefore, is satisfied. With respect to the second question, the inquiry is specific to the circumstances of the case: "The relevant dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202. A plaintiff has the burden of establishing that a constitutional right is clearly established. *Denius v. Dunlap*, 209 F.3d 944, 950 (7th Cir. 2000). While Plaintiff need not present a "case directly on point," he must show that "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 335, 341 (1986). "[T]he law is 'clearly established' if 'various courts have agreed that certain conduct is a constitutional violation under facts not distinguishable in a fair way from the facts presented in the case at hand . . . .'" *Campbell v. Peters*, 256 F.3d 695, 701 (7th Cir. 2001) (quoting *Saucier*, 533 U.S. at 202). If found applicable, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *White v. Pauly*, __ U.S. __, 137 S. Ct. 548, 551 (2017).

As Childress has acknowledged, there is no case directly on point or similar to this case that would have placed the constitutional question beyond debate.[10] Each case cited by Childress is distinguishable from the facts here. In those cases, the central question was whether the inmates were held in prison beyond their release date. *See Burke*, 452 F.3 at 669 (inmate held in jail beyond his release date because officials were deliberately indifferent in timely computing jail time credit); *Campbell*, 256 F.3d at 699 (inmate held in jail beyond his release date because officials miscalculated his release date and the application of good conduct credit).[11] It is insufficient for Childress to point to general statements of constitutional law; rather, he must point to "clearly established law" that is "'particularized' to the facts of the case." *White*, 137 S.Ct. at 552 (quoting *Anderson v. Cerighton*, 483, U.S. 635, 640 (1987)). As such, cases setting forth the general principal that it is a violation of the constitution to hold inmates in prison beyond their release date cannot be converted to clearly established law that placing prohibited items in a parolee's property upon release from jail, leading to his or her re-incarceration, would violate the Eighth Amendment. The two factual scenarios are sufficiently dissimilar to render Childress's citation to the above cases fruitless.[12]

Because Childress has not set forth an analogous case, the Court looks to whether Defendants' conduct "constituted an obvious violation of a constitutional right."

---

[10] In footnote 2 of his brief, Childress states: "Plaintiff is not aware of another reported case with these extreme facts, namely, a parole violation caused by actions of the prison officials themselves."

[11] In *Campbell*, the Court ultimately found that the defendants were entitled to qualified immunity. *Id*. at 701.

[12] The Court acknowledges that the cases cited by Childress are those cited by the Seventh Circuit in its opinion reversing and remanding the dismissal of this case. The Court of Appeals cited these cases, however, in its discussion of the proper Constitutional Amendment under which Childress's claims must be analyzed—not in any analysis of qualified immunity.

*Wernsing v. Thompson*, 423 F.3d 732, 749 (7th Cir. 2005); *Nabozny v. Podlesny*, 92 F.3d 446, 456 (7th Cir. 1996) ("liability is not predicated upon the existence of a prior case that is directly on point"); *Saucier*, 533 U.S. at 202 ("The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."). Put another way, "in light of pre-existing law the unlawfulness must be apparent." *Anderson*, 483 U.S. 640. "[I]f officers of reasonable competence could disagree on this issue, immunity should be recognized." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

The relevant inquiry in this case, then, is whether a reasonable officer could have believed that placing a computer disk in Childress's property (without his knowledge or consent) was lawful, in light of the information readily available to them. The evidence in the record demonstrates that each remaining defendant knew sex offenders have or could have restrictions on possession of computer equipment as a condition of MSR. On the other hand, each defendant also testified he or she did not know Childress himself was a sex offender or that the specific terms of his MSR restricted his possession of computer equipment. There is also testimony that Childress was informed during the class that a disk would be placed in his property. Childress disputes these facts, claiming each defendant was personally aware he was a sex offender and knew he was not permitted to possess any computer related materials as part of his parole restrictions. He also states that he was never informed he would receive a disk.

Based on this evidence, there is a genuine issue of material fact as to whether these defendants acted in an objectively reasonable manner when they placed a

computer disk in Childress's property or turned a blind eye to the policy. Accordingly, Defendants' motion for summary judgment on qualified immunity must be denied.

*State law claim*

Defendants also assert they are entitled to summary judgment on Childress's state law claim for intentional infliction of emotional distress ("IIED"). Under Illinois law, to succeed on a claim of IIED, Childress must show "(1) the conduct involved was "truly extreme and outrageous"; (2) the defendants intended for their conduct to inflict severe emotional distress or should have known that there was a high probability of such distress; and (3) the conduct in fact caused severe emotional distress." *McGrath v. Fahey*, 533 N.E.2d 806, 809 (Ill. 1988). "Severe emotional distress is distress so severe that no reasonable person could be expected to endure it." *Lifton v. Bd. of Educ. of City of Chicago*, 416 F.3d 571, 579 (7th Cir. 2005). "The nature of the defendant's conduct must be so extreme as to go beyond all possible bounds of decency and be regarded as intolerable in a civilized community." *Dunn v. City of Elgin*, 347 F.3d 641, 651 (7th Cir. 2003). The more control a defendant has over the plaintiff, the more likely the defendant's conduct will be deemed outrageous. *McGrath*, 533 N.E.2d at 809.

Defendants' sole argument in support of summary judgment is that placing a disk containing Childress's resume and cover letter into his property box is neither extreme nor outrageous by any standard. Defendants claim the only way such conduct could possibly be extreme or outrageous is if they had specific knowledge of the effect the disk would have, that is, that ultimately Childress's supervised release would be revoked and he would be returned to prison. But that is *exactly* the knowledge Childress

claims Defendants possessed. Given the conflicting testimony in this case regarding Defendants' knowledge of Childress's status as a sex offender and the specific terms of his MSR, a genuine issue of material fact exists that precludes the entry of summary judgment on Childress's state law IIED claim.

## Conclusion

For the reasons set forth above, the Motion for Summary Judgment filed by Defendants on January 17, 2017 (Doc. 86) is **GRANTED in part and DENIED in part**. Judgment is **GRANTED** in favor of Defendant Robert Hilliard and against Plaintiff on Counts 1 and 2. Summary judgment is **DENIED** as to Defendants William Peyton, Ty Bates, Danalyn Wilson, and C/O Saurbrunn.

Jury trial and the final pretrial conference will be set by separate order.

**IT IS SO ORDERED.**

DATED: August 7, 2017

_____
**NANCY J. ROSENSTENGEL**
**United States District Judge**